Your Honor, may it please the Court, I'm Jeff Oldham on behalf of Prosperity Bank. I would like to address three reasons why the party's voluntary choice of Texas law should be enforced as to the non-compete and non-solicitation covenants that Prosperity has with its key employees. First, because under the second prong of the restatement test, Oklahoma does not have a materially greater interest than Texas in deciding whether to enforce Prosperity's covenants, particularly in light of the Texas Supreme Court's decision in Drennan. I'll jump in and ask about Drennan, because it seems like your argument largely relies on that. And I agree, I think your brief says, even though Drennan looked at it on the third factor of fundamental Texas policy, here we look at fundamental Oklahoma policy, so the third factor isn't where Drennan's implicated, but under the second factor it's implicated of which state has a materially greater interest. So I agree with you, that's where Drennan should come into play. But the whole question is the weight at that second step to give to this Texas interest in its corporations being able to apply the law uniformly to all their employees. And the problem I see is that in Drennan, at the second step, recognizing New York's, at that point it was New York's interest in its companies being able to uniformly have the same laws, the Texas Supreme Court found that that was not a greater interest of New York than Texas's interest in its employees, etc. So how do you read Drennan as saying that, sure there's an interest there at the second stage, but that it's an interest that's strong enough for you to prevail? Well, several points on that, Your Honor. As you acknowledge, this factor has to be accounted for in the second prong when you're in a situation like this where it's a Texas choice of law provision, and the question is whether to apply a foreign choice of law. And in both DeSantis and Drennan, they had the opposite situation. And so the third prong in that opposite situation is where Texas policy is more squarely raised. In Drennan, for example, and I can't certainly speculate as to why the Texas Supreme Court discussed it primarily in the third prong, but that's the way that the parties primarily argued it to the Texas Supreme Court, and so the Texas Supreme Court discussed it there because it's more squarely implicated. But there's no question, as Your Honor mentioned, that it also comes into the second prong. And perhaps New York didn't have the kind of case like Drennan was where it's saying that there's a fundamental policy that this state wants to protect the right of multistate employers to have choice of law provisions that they can uniformly and predictably rely on when they do business in the various states. When we're talking three prongs, just so we're on the same wave, 187 first says, is there a fundamental policy that the non-chosen state would have sort of adversely affected, right? Correct. So you're conceding that that first prong, Oklahoma's made the showing. Under DeSantis and the footnotes. I'm sorry, as to most significant relationship? No. Second test, as I understand, but correct me if I'm wrong, second test is significant relationship. Third is the material of greater interest. But the first, therefore, I assume is sort of, those are two relative clauses, right? But the preliminary one is you don't even get there unless there's a fundamental policy that's being... And we absolutely do not concede that. We believe... How can you not concede that with DeSantis? And then even the Drennan footnote about DeSantis says, of course, a non-compete policy would trigger a fundamental policy. Well, because the question is not merely whether Oklahoma has a fundamental policy. The question is whether applying Texas law would offend Oklahoma's fundamental policy. And in this particular case, we do concede that Oklahoma has a fundamental policy, but so does Texas. And both states allow reasonable non-competes. For example, in this context, when they have a sale of a business's goodwill, both Texas and Oklahoma have a fundamental policy of allowing reasonable restrictive covenants. And that's a citation to Griffin, their Griffin case. Well, I think we have sort of two positions as to fundamental policy. First position is that you don't need to actually go into the particulars of Oklahoma law because the fact of the matter is that applying Texas law does not offend a fundamental policy because both states recognize and allow reasonable non-competes as part of a sale of a business's goodwill, and the fact that they might differ in their details does not mean that there's a fundamental policy that's affected. That's our first argument. Our second argument as to that is that if the Court does want to look at the particulars of state law to see how Oklahoma law applies, yes, we have the goodwill exception under Section 218 as the on-point case for that because it holds that even where an employee or former employee has no ownership interest whatsoever, which our case is not void of ownership interest. In our case, the plaintiffs are both owners and employees. And in Griffin, the Court held that even in that circumstance where it's solely an employee, if that employee was critical in helping to develop the goodwill, that the goodwill exception under Section 218 applies. And so our positions that are non-competes in this case, whether you apply Oklahoma law or Texas law, they would be upheld, and so there's no fundamental policy, and that's the second argument. But our first argument was that you don't even have to apply the particulars of state law because the fact that both states do allow reasonable non-competes and are not categorically banning them means that they share the same fundamental policy. That's a little bit intentional of DeSantis, but you're right. It turns on state law. Then, but the sort of therefore, that's why a lot of the discussion has shifted to the two relative clauses, who's got the most significant relationship, and then does Oklahoma have a materially greater interest. That's correct. My reading of the cases on that, though, is the two seem to collapse together. If you've got the most significant relationship, the discussion of materially greater interest in both Drennan and DeSantis is almost sort of just a flip of that conclusion. Do you agree or not? Some of the courts, the way they apply it, they do tend to be the same, but they're clearly not the same. The most significant relationship test is analyzing the party's connections in this transaction. So in both DeSantis and Drennan, I would note— Is it conclusive that the place of performance is in Oklahoma? Because the language conclusive was used by us in DeSantis. There's been some— By DeSantis. There's been some suggestion. I think in this case, the place of performance is somewhat mixed. It's true that the plaintiffs are in Oklahoma, but the fact of the matter is the records show that one of the plaintiffs, Cardone, managed the Dallas Energy Lending Group for prosperity. The record also shows that these plaintiffs are now working for a bank that touts itself as competing in Texas. And so there is an effect on Texas commerce that's going on, and this is— Doesn't the contract itself say performance or the duties will primarily be performed in Oklahoma? I don't have the exact language, but there's a— That's where their office would be. And I think this is really—goes to the key of what Drennan changed about DeSantis, which is we're not in a world anyway of silos where people are working in one city. Their office— But in Drennan, that New York interest in uniformity, which, as I understand it, New York's had that interest far longer than Texas. Drennan says in Texas, this is a new thing. We're not a parochial state anymore. We're a pro-corporate, pro-growth state. I mean, New York, my understanding is that's been entrenched law there for a long time. That's why it's so—has split a little corporations, and yet it was insufficient. But does it matter at the materially greater interest stage the fact that Oklahoma's policy—and I understand your argument that it's not violated, but their policy on noncompetes is in a statute, which is enacted by the legislature. And here, this interest that you say weighs on Texas's side about uniformity, that's just a judicial pronouncement. I mean, when looking at the weight of a state's interest, does the legislature's spoken word carry more weight than a judicial pronouncement? Absolutely not. And if you look at the cases that plaintiffs cite to try to suggest that legislative commands carry greater weight, for example, the Griffin v. Mullinex case, it's an Oklahoma law case, the part quoted says that the legislature makes the public policy of Texas. And if you keep going, it then says the public policy of Texas is by Constitution, statute, and judicial decisions. If you look at Fairfield, another case cited for that, it does at one point say that the Texas legislature makes legislative policy through its acts. It then goes on to say, Texas Supreme Court speaking, so do we, and judicial decisions also count. They both do, but the question is which is given more weight. And certainly, the Texas legislature tomorrow could say, that Drennan decision is wrong. We're going to pass a statute saying, you know, in choice of law analysis, Texas courts should not consider this interest in uniformity. I mean, they have the final word on something like that. We found no authority in plaintiffs' society, no authority that suggests that you give greater weight to a legislative command than a judicial command. But let me make an important point on that. We're not, in this case, just saying Drennan outweighs all legislative commandments from the Oklahoma legislature. When you're comparing the respective states' public policies, Oklahoma does have statutes that disallow a lot of restrictive covenants. Well, guess what? Texas has statutes that also allow reasonable restrictive covenants. Texas also has a constitutional policy favoring the freedom of contract. So, and on top of that, we have the Texas Supreme Court changing its Texas policy from And now, on the material greater interest prong, I think it's also important to note the distinction between— The Drennan discussion of DeSantis that implies that public policy has sort of evolved— Correct. —wasn't done in either of the relative clause sections, right? It wasn't done in the most significant relationship, nor in the greater interest. It's done when the court, at the end, backs into the fundamental policy question. That's right, because in that case, that's where the Texas policy was most squarely presented. But in this case, you don't look to Texas policy under the third prong. And so, it has to go into account in the second prong when you are weighing their various interests. I think it's important to look at the distinction between Drennan and DeSantis in this case, which is that when you're looking on the second prong, you do still look to the relationships to these parties. And in this case, it's much more mixed than it was in Drennan. In Drennan, you had a Texas party on both sides, and almost all the connections were to Texas. In fact, I think as to New York, the court came up with something about the outside counsel having been from New York. I mean, all the interests were centered in Texas. Here, it's very mixed. You have a Texas bank in prosperity. You have Oklahoma residents. You have the Oklahoma residents working for a bank that competes in Texas. You have a contract that was— I'm curious about that, because if it's greater material interest, do you have a case that talks about where the interests are in equipoise? Well, I don't have a case that goes into that. You would just say the plain language just says— Plain language suggests that it has to be materially greater. I don't have a case that's looked at the non-perfect alignments, as you point out, and then resolves the case on that ground, that if they're competing interests all around, then that wouldn't suffice the choice of law, the party autonomy. And most of the cases come after DeSantis and just kind of talk about the DeSantis application of the employee-centric sort of analysis. But that's exactly what Drennan changed. Drennan came in and said, we no longer care only about where the employee is from. We now have a global economy where we have to allow multistate employers to be able to have choice-of-law provisions. And so in this opposite scenario from DeSantis, it is incredibly hard to imagine the Texas Supreme Court saying that a Texas company cannot have a Texas choice-of-law provision that an employee of another state voluntarily agreed to and say that it would give away sort of that choice-of-law provision. On the first prong, what I think of as the first prong, most significant relationship, when in DeSantis we said this will almost be conclusive place of performance. It drops a footnote and it refers to the restatement 196. Do you remember that discussion? Correct. For contracts for services. Correct. And then in that discussion, it says in the context of assessing 188, you would be looking at section 6 principles. That's correct. Okay, so now my question to you is, did the district court or did either party urge there or urge to us that section 6 principles are relevant to how we resolve this? Yeah. The section 6 principles were cited in the briefs in discuss and you talk about the needs of the interstate system. But were they suggested to the district court as relevant to the choice-of-law decision it made? Did anybody suggest that? I believe so, Your Honor. You think so? Okay. And again, we've primarily made our argument under the material or greater interest prong as opposed to the most significant relationship because that brings in these important public policy interests. And I think this case and the result of the district court's ruling in this case underscores exactly why the Texas Supreme Court pronounced the policy it did in Drennan, which is in this case, as a result of the ruling, Prosperity has non-compete agreements with its employees in Texas that are enforceable. But it has the same exact contract with its Oklahoma employees that is now suddenly unenforceable so they can compete against Prosperity from a neighboring state in a shared energy industry. And again, they work for a bank that touts itself as competing in Texas. But Drennan, they found that that was not a covenant not to compete. And you may be right about how Drennan reflects the shift in Texas law. But it certainly doesn't overrule DeSantis. And how do we get around the fact that DeSantis is a non-compete case, unlike Drennan, and that there on the material or greater interest, what carried the day was the fact that the plaintiff was a Texas resident leaving one Texas job to start a competing Texas business. I mean, here that's Oklahoma. But how do you get around DeSantis being a non-compete case? Well, DeSantis, I acknowledge that, excuse me, Drennan made clear that in that case it was not a non-compete. But as we've cited in our briefs, the only court of appeals to have looked at this since then has carried that logic through. That's the Cameron v. Guillory case, that it does apply. And there's no logical reason for it not to apply to a non-compete because non-competes, just like forfeiture provisions, are anti-competitive and are restraints on trade. And I think it's important to note, too, that in the Drennan case, the Texas Supreme Court didn't even bother to decide whether that forfeiture provision would violate Texas law because it found it enough that there was no fundamental policy implicated, and it kind of moved on from there. One other point in response to the question about non-competes, while the court did emphasize that it is a non-compete, it then moved on, and as a separate reason for going the way it did, it expressly overruled, effectively, DeSantis' public policy, and DeSantis, of course, is a non-compete case. And so it's really hard to reconcile what the Texas Supreme Court was saying there as not applying to non-competes when it expressly overruled the statement of that policy from the non-compete context. And that's why we did suggest in our reply brief that if the court has any doubt on the matter about this, the court certainly has the ability to certify this to the Texas Supreme Court. Sometimes it's a good option. Here we're talking about a preliminary injunction where speed is of the essence. So I have some doubts about certifying it to the Texas Supreme Court. You know, they only decide a couple of discrete issues. Then it might have to come back to us. I mean, is that – it just doesn't seem like it's a good procedural device in a preliminary injunction issue. Well, and certainly it's within this Court's discretion. Our position, though, is that on both of the prongs, those are pure legal issues and they are determinative of the case. And the context in which this arose, while it is a preliminary injunction procedure, you have to remember that Judge Miller went ahead and finally decided on the choice of law and ruled on that. And so that issue is squarely teed up and fully reviewable, not just in sort of a couched in a preliminary injunction context. Thank you. Any questions? No. Oh, you have, of course. Yes. This interest in uniformity that you're emphasizing, I mean, again, Drennan clearly recognizes that I think it's an issue of how much weight it's given. And you seem to think it's so strong that it basically trumps all these other interests. There's been a lot of recent laws in states and localities to increase minimum wage. I think Arkansas did that last year. Could a Texas company that has a nationwide presence have a provision that says in its employment contract saying everyone agrees that federal and Texas wage laws will apply and no other state laws will apply because we're a Texas company and we have employees all over and want to pay everyone the same? How would that come out? Well, I mean, that would certainly be a matter of Texas choice of law, of whether they could actually find whether that's a fundamental policy of the other state. I think in a minimum wage type circumstance like that, that would be a much closer question than in a context like this where a party has voluntarily agreed to the consequences of the restrictive covenant that they signed in their agreement. Certainly they could have walked away, not signed the agreement, as at least one of the employees from F&M did, but they voluntarily agreed to that. And so I think here it's a far different case than something like that that would be imposed upon them without any voluntary consent. But even if it violated fundamental policy, I mean, the plaintiffs have to win on all three prongs, so they'd have to also show the materially greater interest, and that's where you're saying this interest in uniformity is so strong, right? That's correct, and that's correct. On that particular part of the analysis, it may be the same, but I think certainly with a fundamental policy, that part of the analysis would be different. And it's not just that we think that the Drennan judicial pronouncement overcomes everything else. It's that Oklahoma has to have a materially greater interest, and when you look at all the statutory, constitutional, and judicial pronouncements, they're at least equal. Thank you, Your Honor. May it please the Court, I'm Craig Enoch representing the Cardone parties. My co-counsel is Jeff Joyce sitting at the table. Let me, I think I can go to a couple of the questions. Judge Acosta, your question about the minimum wage, if I was in the Tenth Circuit arguing about what the Oklahoma Supreme Court said was the public policy, I think the outcome of this case could be different because Oklahoma could talk about what happens to its people within the state. In this case, I think the answer is really relatively simple. The trial judge did address all the Section 6 issues. In the context of choice of law? In the context of choice of law and its very first order that came down. The issue is here, the first question. If the parties didn't choose a law in their contract, what law would apply? Oklahoma citizen, Oklahoma job, Oklahoma bank, Oklahoma residence. This contract is performable explicitly in Oklahoma, in Tulsa, Oklahoma. There is no question. The law that would apply if the parties didn't choose would be Oklahoma law under element number one. What's element number two? Element number two says does . . . Well, but there is . . . this case isn't quite as clean as the others because if element one, the district court cited place of performance as conclusive, but the authority for that was DeSantis. Yes, Your Honor. And their response to that is, well, the DeSantis calculation was very thin on assessing these, the nationwide employer interest in uniformity. So in the context of a Texas bank that's moving to an adjacent state, not across three states to Florida, not up to the northeast, place of performance is theirs as well. Your Honor, on the first element, we're here on a preliminary injunction. Can you say the trial judge was wrong on the law if, in fact, the judge is measuring factors under section six? Okay, so what's your legal authority other than DeSantis that place of performance is conclusive because the district court cited that and then the reversed Maxim district court opinion? What other authority do you have that place of performance is, quote, conclusive for the first prong? Your Honor, I do not have any other authority at this point on that conclusive on the first prong. So that could be legal error. Your Honor, I think it only becomes a legal error if you look at the other two prongs and make a further determination. I think if . . . I don't think there's any finding that DeSantis says it's conclusive on that element, but even if DeSantis did, Drennan doesn't change that position. And I'll point this out to you. The argument is that Drennan changed the position. I think one of the simplest answers is Chief Justice Hecht still serves on the Supreme Court. He wrote DeSantis. He participated in Drennan. And if Drennan was the sea change they say it was, Justice Hecht probably would have said something. Do you think Drennan, the only change for Drennan, was on the fundamental policy question? The fundamental policy question was the change of Drennan. And the reason that's significant, the very first question decided in Drennan. In the opinion, Judge Green says we address this question first. Is this a covenant not to compete? It is not a covenant not to compete. We move on. Moving on, then they recognize that we have a public policy, that we want to encourage multistate employers to be here and have uniformity. They think it's for the benefit of Texas employees to find jobs readily, and it's the benefit of employers who want to do business in Texas that they don't have parochial decisions. That's point number two. But point number two under the restatement is fundamental, a material interest in that issue. The issue is the word in number two. Who has a materially greater interest in that issue? In Drennan, the Supreme Court says we're not talking about noncompete. Oklahoma has a material greater interest in the issue of noncompetes against Oklahoma citizens. So when you end up with Drennan now saying let's move to see if the material issues is contrary, and first of all I should say Texas looked at it and said what happens to our employees, what happens to our employers in Texas is material to Texas. So Drennan is entirely consistent. It says the material issue is important to us on the issue of this uniformity of employment. Third element, now that we've decided that, is anything that New York's doing contravening our material issue. They say it doesn't matter if the outcome is going to be different. We just want to see if New York. They say New York has no law that contravenes our material concern of uniformity in contracts. Therefore, New York law applies. Drennan is entirely consistent with the DeSantis discussion about how the restatement works. And so when we talk about Drennan, we say the second issue and third issue, Drennan identified a public policy issue that was distinct from the covenant not to compete. The incentive programs that New York. The incentive programs. They said that is not it. And so then they go to now, so what is the public policy we have? Uniformity. Does New York have a policy that contravenes what is material to us? And they say New York does not. And I think the court ought to be very concerned about this argument about Drennan. I think the Supreme Court would be very concerned. What is your response to the state? What is your best case from Oklahoma that, in fact, their approach to restrictive covenants non-competes is much less permissive? The Howard case in Nitro. The Howard case, which we have cited in Nitro lift, I believe, ultimately was reversed by the U.S. Supreme Court because of an arbitration clause that was in it. But Howard was not touched on the question, very restrictive. Covenants not to compete are void. There are narrow categories. We do cite one case, the Bailey case out of the Oklahoma Supreme Court, that says an ownership interest that's de minimis does not meet the exception that they talk about, and they talk about the fact that reforming the contract, if they make one material change in the contract, then the Oklahoma Supreme Court will not reform it. That's the Howard case. Let me ask on fundamental policy. I mean, I see some of these sources for saying Oklahoma may have a fundamental policy on non-competes. I mean, there's the statute itself, even though there's exceptions. As a general matter, Oklahoma doesn't like non-competes. But on the non-solicitation, I read that statute as generally favoring non-solicitation agreements in Oklahoma law. Then there's the energy propane case that says we're going to still apply the rule of reason, so there's not blanket prohibitions on even non-solicitations that don't come within the plain language of the Oklahoma statute. So what's your best authority for focusing in on the non-solicitation clause, saying that that violates the third prong, gets you where you need to be? The best authority is the statute itself. It's direct solicitation. It is not the indirect. It is not the, in fact, in the Howard case, they had this discussion of what was being prohibited in Howard. And our view is under Howard you have the very narrow view of what is permitted both in the direct solicitation and in the other provisions, and we think this is so beyond that. The only way you could get it to be acceptable would be significant reformation, and Howard says you cannot reform this kind of language. But you have this statute generally allows non-solicitation agreements in Oklahoma, and then in certain circumstances, and there's carve-outs, but it seems to me if the general rule is they're okay and yet there are exceptions, which you think mean the one here wouldn't fly under Oklahoma law, does that rise to a fundamental policy when the overall rule on non-solicitations in Oklahoma is they're okay, unless I'm reading Oklahoma law incorrectly? Your Honor, I think that, I think in direct answer, if we're going to talk about the merits and whether or not, in fact, these would be enforceable or non-enforceable in Oklahoma, we've gone beyond the preliminary injunction and the issue of what, how far does the court have to go to make a determination of whether the trial judge abused his discretion. When you read the Howard case and when you read the statute as it's written on its face, does the court have a determination that there's an expressed policy that is contravened by Texas, which has a much broader allowance of covenants not to compete and has a much broader anti-competitor of an employee signing you can't compete, and can you say which one has it, and then you say Oklahoma. This case was not briefed and argued on Texas law. It was all claimed, I should say, sorry, that prosperity argued as if Texas law was going to control the whole agreement. The trial judge in the very first preliminary introduction injunction brought a, rendered a partial summary judgment on the issue of which law applied Oklahoma. Thereafter, additional reconsideration, additional injunctions were requested, one in particular on the nondisclosure. The judge said that he wasn't reconsidering the summary judgment, and moving forward he had an evidentiary hearing on the nondisclosure, finding no disclosure. I think the court will find that it's not compelled to think that it was a mistake. I think they'll find the findings are supported by the record. Didn't grant an injunction there, and now we come back to the question, does Oklahoma law control the covenants not to compete and the non-solicitation issue, which was the issue before the court. That is, that's a 187 question before us. Sure. Does Oklahoma control, but stepping back sort of how this came about, you know, part of this sort of larger factual context is we, it appears on the record that we have highly informed individuals who enter an agreement. If I'm not mistaken, one made the affirmative choice not to enter into an employment contract post-merger. So very informed people enter an agreement, say they won't compete, and then the record reflects that they acknowledge directly that once they've switched banks they are competing. So the party autonomy rule seems to be crying out, and then you shift to 187 and you say, okay, well, that was their choice, and now they're backtracking out of that, arguably, factually, and the only way we allow them to is if the state that wasn't chosen has this fundamental policy, and you claim you've asserted that, plus the two other elements, right, most significant relationship and materially greater interest. Yes, Your Honor. Okay. And then I guess one aspect of this is, has Drennan shifted the assessment of either most significant relationship or materially granted interest, because we've got to acknowledge this is a Texas bank trying to expand directly into Oklahoma. So the place of performance is one situs. Your Honor, I think you would end up with, well, not to digress, specifically answering your question, Your Honor. The Oklahoma state statute does not allow a contracting party to agree to a non-compete. So let's begin with this proposition. It does not allow, and any number of states will not allow an employee, and for very obvious reasons. You want to keep your job, sign my document. The states don't want employees put to that. Texas has done away with it, but Texas did modify it. Now, there are some conditions before you can get the non-compete, but Texas will allow that. But Oklahoma does not allow covenants not to compete. So we begin with that premise, and we go back to 187. If you're going to decide this question on choice of laws, would Oklahoma have been the case that the law would have controlled, but for the people's choice? There is no question, no argument, nothing being made here, that Prosperity could have gotten this case in Texas, applying Texas law, when they bought that bank up there and took over for F&M up there, under the categories of where the state with a significant relationship. We'd be having the same argument about Oklahoma law applying, because they live in Oklahoma, that's where they do their job, that's where they have their families, that's where they've always been, and they worked for a bank that got acquired by Prosperity. It went up there and bought that bank. So then we come to number two. Well, that doesn't answer the whole question. The number two question is, but does that state, Oklahoma, have a materially greater interest in the particular issue, covenant not to compete, than does— Examine number two. They're not just asking abstractly policy competition. They're looking at it as to application to these individuals, which doesn't necessarily hurt your argument. But when you say materially greater interest in what, it's back into that set of relationships. Absolutely. Okay. Yes, Your Honor. It is into that, covenant not to compete. So what's the case—I ask your opposing counsel this—what's the case that says, you know, we've got both at rough equivalent interest in this relationship? We've got Prosperity Bank in an adjacent state trying to expand into Oklahoma. They've contracted with people they think will never betray them. Why wouldn't—what's the case that you've got that indicates how we assess whose is greater when they both have valid interests? Your Honor, I'm not aware of a case that says if you have equal. I think the third prong is what keeps that from being a conflict. But under the second prong, isn't it your burden? You have to show that Oklahoma has substantially greater. So that creates the burden on you, right? The substantially greater interest in that particular issue. And I think when you say, okay, do they have an interest in employees in Oklahoma and covenants not to compete for Oklahoma employees cannot, I think that's not an issue that can be changed. I mean, I don't know what interest Texas has—and I beg this question with prosperity. I don't know what interest Texas has in a New York bank going to Oklahoma, buying an Oklahoma bank, and then having a choice of law questions that has Colorado be the choice of law. I don't know what that interest is. The interest in Drennan was Texas—I have a Texas employee and a Texas business that's multinational. That's our interest. Well, we're trying— Go ahead. Texas does have an interest in this materially greater inquiry in the justified expectations of the parties to a contract. I mean, even DeSantis talks about that, doesn't it? In the justifications in their contract, they do for Texas citizens. I mean, I've not seen the context where— How do you limit it to— We have to balance Oklahoma's interest that they don't like these non-competes against Texas's interest that contracts will be enforced, that its businesses can rely on those, and this interest in uniformity. I mean, both DeSantis and Drennan talk about those at the step two, don't they? I guess the issue that I'm having difficulty with is in DeSantis you had both a Texas employee and a Texas employer for where the law applied. In Drennan you had a Texas employee and a Texas employer. New York law applied. In DeSantis, choice was Florida, but Texas law is stated to apply. Yes, in DeSantis. Why? Because when you got down to the material interest, you ended up with the non-compete was a particular material interest here. I don't know if we could find a case where you have a Texas employer and an Oklahoma employee who is not a Texas resident, not subject to Texas law, and the Supreme Court would say, well, we're going to balance prosperity's interests in being able to unify its Oklahoma contracts. It might not be as strong when the employees also are not in Texas, but certainly the Texas Supreme Court would recognize the state's interest in helping its corporations, wouldn't it? I think it would, but I think you raise the question. If you're going to be – if you actually have competing interests, the court would have to call on what's the more compelling interest. I don't think we have a state compelling interest in what an Oklahoma employee will be subjected to by law out of Texas. What we had in Drennan, we had an interest that was solely Texas employer, Texas deal. In DeSantis, Texas employee, Texas employer. In this case, Texas business, Oklahoma employer. I think it would be very difficult for the court to ever come up with a case where a state's interest in how it takes care of its employers would be the equivalent of Oklahoma's interest on prohibiting its citizens from having covenants not to compete with any employer. And that's why I have some difficulty. I'm not sure I could find a case, and we'll certainly try and find one, where the court tries to balance those interests. But I believe that's the issue in Drennan they would like you to ignore, that Drennan doesn't change the seascape on this. Do you agree that Section 6 principles factor into the first prong, the 188 prong? Yes, Your Honor. I think they factor in because you have to determine what is the state with the most significant relationship to determine if nobody chose a law, what law would apply. Those are the contacts of place of performance, citizenship. What about these expectations of contract and all those things? Well, our contract says it will all be performed in Oklahoma, so we have an express provision in our contract that says it's performable in Oklahoma. So even the contract itself says it will be performable there. But at that first stage, do you factor in the choice of law agreement? Or doesn't that first test of significant relationship look at which law would apply in the absence of a contract? I guess in the ordinary choice of law, when they haven't chosen it, you've got to have the most significant relationship, and so what would that happen? That's the Cameron case. The guy lived in Colorado, and they picked Delaware as the law, and they came to Texas to argue it. And really the question was what had the most significant state, and they didn't even claim Colorado where the employee lived. Well, so you get in this other discussion going on, but I do believe that's the you decide what's the most significant relationship. I think it's this judge could not have abused his discretion in determining Oklahoma law applied. He could not have abused his discretion in denying the temporary injunction pending the merits of the decision. In your brief at the outset, part of the reason you're saying you suggest that the choice doesn't carry as much weight is because there was no choice. They were misled? No, Your Honor. Well, yes, in the brief we say that. Is the support in your brief for each citation that they were misled and were told that in fact the Oklahoma, the provision wouldn't apply in Oklahoma, is that always back to Mr. Cardone's own affidavit? Is that the only authority in the record for that proposition? Your Honor, I believe we have more evidence than that. We recited to Cardone. And the primary reason we did that is because that goes to the question if this Court decides that Judge Miller was wrong in saying it goes to Oklahoma, you go to Texas, they still don't get an injunction because we never tried the issue of whether the covenant to compete in Texas was valid. That was an example of why it would not be valid if the parties were misled into what they were signing. And so we did provide the Court with some support for in response to their claim, they want you to enter an injunction from here, and that's in response to our point that if you conclude that Texas law should have applied, but we have things that we can take to the Court that were not there. Your argument is that if they do perceive legal error, at most it would be a remand for the harms to be balanced because you've got arguments to suggest? That's correct. That's correct. And they don't, the judge didn't put them to the test on their harm analysis either under their injunction. So they would have to go back to the harm analysis in any event. Thank you. Thank you. Thank you, Your Honor. I'd like to address three basic points. And I want to be very clear about what Texas's interest is under prong two because there's been a lot of discussion of prong one. But our argument primarily is that under prong two, Texas has at least as strong of an interest as Oklahoma. And that interest is in having a Texas company who enters into a Texas choice of law provision with an employee from a neighboring state who's going to work for a company that is competing against prosperity in Texas. All of those connections show that there's much greater connections to Texas. The evidence shows that these employees were competing and soliciting back into Texas or just in the Tulsa area? The evidence reflected that Cardone managed the energy lending group in Dallas when he was at Prosperity. They've now gone to work for CrossFirst and several pages in the record, CrossFirst House itself is doing business in Texas and competing in Texas. Page 991, 1393, and 1409. So the interest, all those connections to Texas. In other words, whereas in Drennan, you had two parties from Texas and all the connections centered in Texas. So the court said that that's a materially greater interest than New York, although notably the court nonetheless said we're going to enforce choice of law provision notwithstanding that. Here you don't have all these interests centered in Oklahoma. It's very mixed. And so the policy interests that come into play carry that much more weight in the materially greater interest. You have a very mixed set of connections, and Texas has a very strong interest. And referencing Section 6 of the restatement, if you go down that list, all of the connections I just said, you see in there exactly why they're all important. Judge Costa, you mentioned the protection of justified expectations, certainty, predictability, and uniformity of result. The relevant policies of the form, which is here, Texas. And you're saying those all affect the materially greater interest inquiry, which I mean DeSantis even discusses those interests. That's correct. There's been some confusion on this. Claire, on the first issue of significant relationships, that we have to look at without considering the choice of law, right? Because we're trying to look at what state law would apply if you didn't have it. Because if Texas law would apply anyway, why even worry about this other stuff? Prong 1 looks at if you didn't have the choice of law provision, what would happen? Prong 2 now says, okay, we're only going to actually get, you know, override that choice of law provision, which, by the way, under the restatement in Texas law, should rarely be done, if that state that would otherwise apply has a materially greater interest than the form that the party selected. And here, you just — they're at least — If rent and interest doesn't come in, it's the first factor, because we're assuming there is no agreement to apply. That's correct. The first factor really goes to the connections to these parties and transactions. Prong 2 is where you bring in the other policy interests, including that Oklahoma has a policy interest in its statutes. Texas has a statutory interest on covenants not to compete also. It has a constitutional interest in freedom of contract. And Drennan has made very clear there's a public policy interest in protecting the rights of multistate employers. So Prong 2 encompasses the freedom of the contract. It backdoors in the choice of law a little bit? Well, it goes into the Prong 2 analysis only. Just the fact that Texas has a strong interest in letting its citizens negotiate contracts voluntarily with sophisticated parties. That seems intuitive in a way, but what's your best authority for the materially greater interest, including the choice made by the parties, because that's the expectations in the party autonomy rule? Well, it wouldn't be so much the choice. It's that the state values the ability of parties to make that choice and the uniformity and the predictability that goes with it. It really kind of dovetails with the Drennan interest because its parties should be able to enter into these contracts. And another point I wanted to make is that, as Drennan shows, uniformity and predictability are key for businesses. If businesses like Prosperity that are Texas companies cannot enter into a Texas choice of law provision for entirely legitimate reasons, including that it's a home base there, that it has developed law in this area so all the parties can look at it and know what they're getting into, if businesses cannot rely on that, that will quickly undermine their confidence and willingness to have Texas choice of law provisions in future cases and certainly undermine their confidence in them in this case. Did you argue to the district court that these very employees, their work required their computer programs to go through Texas and they would be back in Texas? That's correct. And what did the district court say as to those people? The district court acknowledged that but found that the place of performance was still in Oklahoma because that's where they were actually physically located, which, again, I think Drennan reflects that in today's world where individuals can be in one place but work in other states and compete with companies in other states, we don't think that analysis is right. I want to turn quickly to the Oklahoma law and fundamental policy. Both states are the same in saying that restrictive covenants are not allowed except in these circumstances, and both states recognize it in the sale of goodwill, and that's an enormously important point because it's not a basic employment context. I see I'm out of time. I conclude. It's not a basic employment context. This is the sale of a business, and so if you have a business that wants to buy another company, oftentimes in a service industry like this they won't do that unless they can know that they can secure and maintain the goodwill through the employees that have the relationships. Both states recognize that fundamental policy, and the mere fact that the states implement that policy differently does not mean there's a different fundamental policy. There's a question that hasn't come up at all. It's more a curiosity on the injunction you've requested on the nondisclosure agreement, which Judge Miller found to be a valid provision that could be enforced. Just practically speaking, what would an injunction really get you? I mean, he already has this contractual duty that's been recognized by Judge Miller not to disclose information he received to Prosperity. An injunction, I mean, I understand you could get a remedy of contempt if you can prove a violation. Maybe it changes the remedies, but does it? He's already under a contractual duty, so why does it really make that big of a difference? Well, on the inevitable disclosure doctrine, the argument we've been making, he would get a preliminary injunction not just that they cannot use or disclose it, but because they're going to a job in the exact same role with a direct competitor that they were for Prosperity, that there is no way or that it's inevitable that they will use that material, and so the injunctive relief that the cases we cite grant don't award just a use, you know, a prohibition on using or disclosing. They also prohibit them from soliciting the direct clients of the party for the direct competitor. So that would be what it is, and again, that's just a preliminary injunction doctrine. Thank you. Thank you. Thank you.